Good morning. Ma'am, please look over here and show it on behalf of the Department of Defense. I'll be splitting my time today with Rex Jahnke, who will be presenting argument on behalf of Sikorsky. And if I may, I'd like to reserve a minute for rebuttal, if I may. What's at issue in this case is proprietary information contained in Sikorsky's comprehensive small business subcontracting plan, including the names of subcontractors that Sikorsky deals with and details about their business relationships, information about how the company decides as it puts it under to make or buy certain items, information about how Sikorsky trains its employees and other strategies that the company employs to enhance its small business subcontracting program. Disclosure of this information is likely to cause substantial competitive harm to Sikorsky, and indeed, this is precisely the sort of information that Exemption Form was meant to protect. In ordering disclosure of the entire subcontracting plan, however, the district court incorrectly held that none of this information is protected by Exemption Form. The district court also incorrectly held that the signatures and business contact information of certain individuals identified in the plan are not protected by Exemption 6. Let me ask you a question. Does the way your client dealt with this, does it play any part in our decision? I mean, they filed the request at 20 days to notify whether you're going to comply or not. You filed finally after 30 days, something suggesting you wanted 30 days, and that you needed the unusual circumstances which you could have, and then you didn't do anything. On November 4th, they finally had to send a letter of appeal. Still didn't do anything. Finally, on May the 12th, 2014, they filed this action. Then it had to be a case management conference, and here we are now at that point, and we've got a motion to compel, and still, it takes you forever to do anything. You file an answer finally, and that answer doesn't at all respond to what the district court suggested, and then you file a cross-motion for summary judgment. At that point, the district court's pretty mad. We'd say it differently, and I do, but mad. And now you're saying, okay, I submitted an affidavit before. I'm now submitting another affidavit, and I'm not going to do it the way you told me to do it. I'm not going to give you the report, take it down face-by-face, tell me what the basis is, what I want you to do. I'm just going to give you whatever the heck I want to give you. We'd say that a little bit different, but I don't. And you're going to have to deal with it. Is that the way the Department of Defense are always responsive? I mean, to me, if I had to give deference to the district court in their decision, I'd give a lot of deference here. So do I take that into account? No, Your Honor. No, I have to just throw it out and say you can have whatever you want on a FOIA request, be as ornery as you want, as disgusting as you want, and I still have to give you the right to argue the exemption on the floor? Well, Your Honor, I mean, generally, in terms of the procedure or the process that the agency follows, there generally isn't a claim based on that. The district court did ultimately reach demerits. And, you know, when we submitted, he submitted both a redacted and an unredacted version of the plan for the courts-in-court review, along with the declaration. And as it turns out, it was not exactly what the district court wanted. But we thought we were being helpful, and we apologize that it turned out it wasn't what the district court wanted. Well, Your Honor, you didn't try. You just said what you wanted. You said a redacted to him, an unredacted to the other side, and an unredacted to him. And he had to guess how he's got to go through. And based on this affidavit, which really doesn't pertain to what you said, is generally there. So even I have to look through the affidavit to find out what the devil you're really saying, you know, explained it. Well, I think with all due respect, we thought we were being helpful. We certainly did not intend to make it difficult for the district court or for this court. But ultimately, the district court did reach the merits, and he did not decide on the basis of the fact that we didn't comply with his request. He ultimately did reach the merits, and it's the merits of his decision that is the basis for our appeal here. Great. I hear your answer. Thank you. And then I would like to emphasize, you know, the types of information here. You know, if the entirety of the report were more disclosed, competitors would learn the types of items and services that Sikorsky subcontracts for, who it obtains them from, how much it pays. And it should be too hard to understand that a company really wouldn't want that information to be disclosed to its competitors. You know, information about those sorts of details, our proprietary and the sorts of things that companies do closely guard. The district court also, you know, incorrectly held that none of the information that we protected with respect to the business contact information or the signatures of some of the employees was protected by Exemption 6. You know, this court expressly recognized a non-trivial privacy interest in an employee's e-mail address in Electronic Frontier Foundation. And, importantly, Plaintiff has never asserted a public interest in disclosure of any of this information. And, indeed, there's no conceivable public interest here in the redacted signatures or e-mail addresses. So, at that point, we're just measuring, we're just weighing. There isn't really a heavy privacy interest, but it certainly outweighs the disclosure. That's correct. There is, at least, a minimal privacy interest here. And there's absolutely no public interest. I would emphasize that the only relevant public interest where the court balances is shedding light on the agency's performance of its statutory duties or otherwise letting citizens know what their government is up to. And there's just no, the redacted signatures and contact information just does not let us know what the government is up to. There's no public interest here. And if the court has no further questions, I would ask that you vacate the district court's order. Thank you. Good morning. My name is Rex Reiki. I'm here on behalf of Sikorsky. With regard to Judge Smith's questions, we understand your frustration about it. I'd just point out Sikorsky wasn't involved in that. He didn't have the control over it. If we know, maybe we would have been able to do something differently. I also submit that this whole question about whether or not an adequate declaration was provided, because District Judge did say, on the very bottom of my hand, he said, I don't want a violent index, which was a little surprising. But on the other hand, he said, I want you to specify in the aggregations when specific things are held out or should be redacted. But my point is, it really wouldn't have made any difference, because the district court here didn't parse through the document and say, well, the third paragraph on page two could be withheld. We don't have to do that terribly withheld. The district court said, nothing can be withheld. So the district court didn't really care about that parsing out. I think that's probably why the district court didn't base anything on that. He simply said, nothing's protected here under Exhibit 4. Nothing's protected under Exhibit 6. Therefore, I don't care. So it would have been nice if it had been handled differently. I don't think it really made a practical difference here in the plaintiff's position. While they were unhappy about this, of course, it was not we win because of this conduct. It was simply, well, the government didn't do this. We had to file a lawsuit. They were supposed to win the case because of the conduct. Now, by the variance here, what we think is fundamentally wrong with the district court's decision is the district court said that you have to show, to get exemption for, that the information would cause competitive harm. And you rejected the declaration of the really two, but essentially one's more elaborate than the other. But you rejected the two declarations on the basis that they said it could. And it's true. You do say it could. This could happen. This could happen. But, you know, this court implied in Reisman's case said could is enough. I think it's clear why could has to be enough. Nobody in Sikorsky's position can say what its competitors will do with the information. If they get their hands on it, the best Sikorsky can say is, well, if you got this information, you could use it to damage Sikorsky. Because you can't possibly say, well, I know that one of our competitors will, in fact, go get the information and decide to use the information against Sikorsky. Maybe he will. Maybe he won't. So the best thing that the declarer can say is it could. But the district court said it was. Could is not enough. That was the only basis for rejecting the exemption for. And I submit that it's simply not the law. You're shooting in the law that you have to show, in fact, harm, contingent harm, will happen. Plus, the judge also says we have to show that there's actually competition. We agree we do have to show that. Two points about that. The first is this wasn't raised below by the plaintiff, and so we waived it. And the second point is our declarations make it very clear that, in fact, we are in competition with a list of companies that we need, and that we're in competition for government contracts, which is what this is all about. So that is the second element of establishing exemption for. You've got to show actual competition, and you've got to show it could harm you. And we respectfully submit that our declarations establish both of those things here. And, therefore, the district court simply erred in rejecting exemption for. Our exemption says, I think Judge Smithy had it described, not overwhelming privacy interests to make e-mail addresses with no numbers or signatures, but no public interest whatsoever. It does not turn over to a plaintiff. They don't show anything, not anything, about how the government operates, how it makes decisions, what it does about subcontracting, or anything else. And so the weighing process is appropriate under Exemption 6. We respectfully submit that the district court simply got it wrong, because the district court said, well, the interest here in privacy is trivial, but you do. That is not the test. The test is we balance the degree of privacy against the public interest, and any balance in here we submit in self-exemption 6 upon. I'd like to reserve the rest of our time for rebuttal, unless anybody has a question. Thank you. Good morning, Congresswoman. I'm Robert Belchoff of the American Small Business League. This court has briefly touched on what I consider the element in the room, and that is, in this case, the trial court below gave the defendants specific instructions, provided them with a primer on how to properly prepare a declaration in order to support paying an exemption under the Freedom of Information Act, and requested that a press declaration, having rejected the initial, be lodged with the court, along with the non-deductive copies of the court, be evaluated. Despite the fact that the trial court had very strongly and fairly clearly rejected the initial declaration filed in support of the exemptions, the defendants in that case did absolutely nothing to improve upon that and to provide me with additional information, which the court will give you. But you do agree, don't you, that I don't have any deference to give to the court that this is a de novo review? Your Honor, I do agree that it's a de novo review, regardless of what happened. That's the worry. I mean, when I was going through this, when the demonstration was going up, I had been a district judge. But nonetheless, if I'm going to go with a de novo review, I have to look very specifically at the exemption. And if I look at the first exemption on commercial or financial information, privileged or confidential, did you argue about actual competition in the district court? Your Honor, the argument of actual competition, but the nature of that competition is subsumed in other issues we raised. We raised it in our initial. I looked very carefully, and I'm having a tough time saying where that came up. Your Honor, I can locate that for you. However, I think it's probably a little bit more expeditious if I point out that the trial court in this case, in its order, specifically ordered that a defendant provide the competent testimony as to the nature of the competition, and that is after written order, a G.E.R. 24. Do you think the fact that the trial court said that gets you out of your necessity to point it up to the trial court? Your Honor, at any time that a trial court considers an issue, then there is no waiver of an argument. Second, Your Honor, I'd like to just outline the procedural inconsistencies in this case. I never would have had a chance to raise an argument. Let me ask you another question. Let's just go to what it is that we have here. I, with the help of good law clerks, came up with information that I think is not yet outstanding. In other words, the parties came to, if you would, an agreement about what would not be produced, what would. And we've got some, for instance, information about Sikorsky's training program and other strategies used to enhance Sikorsky's small business subcontracting program. That was not produced. But the affidavit says, if the competitors were to discover what programs they used, they would use the same programs to divert the government's business away from Sikorsky. That wasn't given, as the district court had suggested, but it was in the affidavit. That seems a possible reason not to give it. I can't find anything in trying to make exception for applies that suggest that is not a good application. That's not a good response, if you will, to your company wanting that. Your Honor, one of the things I think you need to keep in mind here is that when we go into a FOIA action, when we make a FOIA request, there's a strong presumption that every document the government has its hands on is disclosed. I understand that. I know what the standard of review for executing FOIA is. That's why I asked the question. The standard of review is whether or not the evidence provided by the deterrent puts to the court a conclusion by the court that there would, in fact, be a strong likelihood through the economic order, not maybe, not could, not possible, a strong likelihood. And this, I think, is bringing up how that's getting confused. It could happen, yes, either in a lottery draw. Is there a strong likelihood of that happening? No, there isn't. So they need to show the strong likelihood. They have to show how could you ever do that in a competitive area like this. So Gorski says, look, we're in competition for government contracts. We compete with Bell Helicopters. We compete with these other firms. And if you have pricing information, you have information how we intend to cost what we're going to fund in-house, what we're going to send to outside suppliers, then you now have information about how we're going to structure our deal and then give you a competitive advantage. How can they possibly prove that you can use that? Your Honor, in your example, you mentioned pricing information. I don't believe that that's an issue here. I do not believe there's any pricing information in the heavily redacted document I've seen. To be honest, oftentimes I can't tell what has been redacted by the public. But there are ways in which they've educated how they determine whether they're going to do something in-house, how they're going to send something out. They've got information in there about how they use their small business subcontractors. If it's useful, and they said that it is useful, but how can they possibly prove that somebody really used that information? Your Honor, does it always have to be conditional? It doesn't always have to say, if Bill Helicopter uses this information, it will be useful to them. But it's still got to be conditional. But you've got to provide the trial court with enough information to where the trial court can understand how this information would likely be used. Not would necessarily be used, but would likely be used by a competitor in order to obtain a competitive advantage over the submitter. And in this case, they simply did not do that. They said, well, maybe somebody could use this at the end of the allegations in the declaration for all of them, leaving you to close the case. There is no evidence as to why, for example, their training program would somehow, if disclosed to an outside party, confer an economic advantage on the outside party, because we don't even know what training program they're talking about. In fact, the other day, they had to describe what it is they're training or who it is they're training. But the minute they start into all of these training programs, what they're suggesting is that gives you the chance to do the same thing and divert the government's business away from Sikorsky. That's what the evidence suggests. It's like balancing how much information versus you don't have to give something that would give away something that's in-house and that they can use. So I'm using that balancing act. It's not the exact language, but that's what I understand it to be. It is a balancing act, Your Honor, but I must point out that the balance has to be towards the more likely than not. I understand, but in Lewis v. the IRS, it says it's not to be so detailed as to essentially reveal the information sought to be protected. So if I am looking at that, then what you're requesting is them to give certain training programs. It seems to me that's the information they want to be protected. Your Honor, I think in the Lewis case that you're citing, they are referring to the contents of the declaration. That's what I was looking at, and that's all we got. What I want to remind this Court is that that declaration was not to be filed. The trial court's instructions were that declaration was to be lodged. It was under seal and accompanying the unredacted version. For reasons unknown to me, the appellate in this case, the DOD, filed the declaration, and they are now trying to justify the fact that the declaration is so conclusively, so lacking in detail, so lacking in evidentiary value because they did not want to disclose all of this material. Well, the trial court never intended them to disclose the material. The trial court wanted the declaration solely for its own review. I was quite surprised to find it not in my ECF. It was not new. It was supposed to be detailed, far more detailed than relevant, I would see, and to provide the trial court with guidance as to whether or not an exception applied to the actual document in front of the trial court. And I understand that they certainly would not want to file a document that was any more detailed as possible economic damage, as they considered that they weren't supposed to file anything. Counsel, despite the overpricing information you called me on that, on ER38, this is the supplementary Johnson declaration, and she says that it reveals the dollar amounts of actual subcontracts. Okay, so it's overpricing information, but we do have dollar information in these documents. Why is that valuable to Scorsese's competitors? To be perfectly honest, Your Honor, I don't see how that would be valuable to Scorsese's competitors. If what you know is you know that a certain contract, you don't know what it puts you forward. So far as I can tell, you know that there was a certain contract or class of contracts awarded to a small business, a single business in the contract amount. I don't think you can deduce finite item pricing from that. Again, Your Honors, I have not seen in the document other than a redacted version, and the redacted version does not really provide me with enough information to deduce what is actually redacted. But no, I would say that a contract amount would not necessarily confer any economic advantage on a third party that knew that information. A dollar amount of actual subcontracts wouldn't provide any information to a company unless you knew what the quantity of good supply was. So you could deduce supply and item price. Yeah, well, if it's $10,000, that might be one thing. If it's $10 billion, that might be something else. You could probably deduce quite a bit by the difference between $10,000 and $10 billion for each of the homes being manufactured and the houses being manufactured, and I do not believe that is contained in this document. At least I found no place in the redacted version which would suggest that information was in there. Now, if the declaration submitted by a Sikorsky officer by the DOD provided the court with that information and explained it to the court below, and we had it in front of us, which I guess would never be part of the record, maybe we could figure out a way in which a third party might be able to deduce this information merely from the dollar amount of the contract. Otherwise, you simply cannot derive that unless you know the nature of the goods that are being sold. And the quantity of the goods being sold, the fact that the contract is for $10 million tells you actually nothing. If you want to address the Exemption 6, Your Honor, the Exemption 6 was another rather last-minute claim made by the Department of Defense. We did not have an opportunity to address that in the trial court. We do feel that there is some benefit to being able to imagine a signature, to have the name underneath just to ensure that the correct party, the party that substantially signed the document was, in fact, the party that signed the document. Now, we would implore objection, or report objection, to the identities of certain parties,  if they only are entitled to those. Well, the Electric Frontier Foundation really suggests that I have to balance the individual's privacy interest, I guess, the extent to which the FOIA's central purpose of opening the action would be served by the disclosure. In this particular matter, I really didn't find any real public interest in the disclosure. But I found, I'm not going to say it was a large, but I would find at least some harm as to the privacy interest, as far as you can get at. I would agree with the trial court, but the privacy interests here are indeed negligible. I guess I'm having a tough time with that, because she says this is a personal identifying information, which was not disclosed to protect their privacy. Well, I don't agree with that. If I look at Electric Frontier, she couldn't get their Electric Frontier work email addresses protected. Your Honor, these are matters, FOIA matters are decided on a case-by-case basis. Now it's de novo in front of me, and I'm having a tough time understanding why this cannot meet some privacy interest when work email addresses, not needed to identify the party communicating with the government, are protected from disclosure. That's the way tricks are found in fundamental holding. Yes, Your Honor, what I would point out in this case is, to my recollection, having reviewed the reacted document three hours this morning, we're not talking about work email addresses. Your Honor, there is a large thing, because you don't have a specific reason that I can understand would be better than what's in Electric. Let me give you a more specific reason. This is a document that is in your brief, or is this just something you're coming up with now? To be honest, Your Honor, I would have to review my own brief, because a long time has passed. Let me give you a brief answer to that question. This is a document, which essentially is provided by a defense contractor basically identifying its plan to incorporate small businesses in the production process. And I think under those circumstances, with this particular document, it is a situation where the identities of the people who are responsible for producing that document and certifying that document is something that the public is entitled to. Thank you. Okay, thank you. Your Honor, I'm about to say this, so I'm about to open it. First, let me give that last point. I don't understand identities. We disclosed all the identities of the names of the people in the document. We didn't redact anybody's identities. We redacted their business numbers, their signatures, their e-mail addresses, but you can see every single person in there. The other thing I think is important here is that if these folks... I don't know if it's found in book orders or anything, but if you look at the redacted version here, we disclosed something like three quarters of the document. It's not an inspection. We're walking in the door and saying, you know, you can't know anything about what we're doing. This is a small business administration. We carefully went through, and when this appeal came along, we went through it again and lightened up the decisions and reviewed it even more because we wanted to make sure we were completely consistent with these folks' decisions, but we haven't tried to withhold everything. But the police, when this issue comes down to it, I think this training example is a perfect illustration. They say, well, we want to know about all the training, and if you did, what did they say? That we failed to disclose about the training. They say you failed to disclose the nature of the program, you failed to disclose who you're training, and you failed to disclose the subjects of training. I don't understand. If we disclosed all that, there'd be nothing that would be exempted. That's the problem, the level of detail at which they want information provided. In fact, it's that a police versus IRS case. It would disclose what we'd like to keep from being disclosed, but I think they're simply asking for far too much here. And without any meaningful interest in knowing this information, it just doesn't deal with what the government's up to. All it does is say how we try and comply with what the government wants us to do. If they want to know how the government makes decisions, to my guess, that's not what we're here about. What we're here about is not disclosing our ways of addressing how we do small business contracts. Thank you. Jay? I think, counsel, first and foremost, you just made all the points, but I would like to emphasize that the specificity that plaintiff is asking for would, in fact, require us to disclose the very information that Sikorsky is seeking to protect. Thank you.
judges: Kozinski, Bybee, N.R. Smith